# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

**DANJEL GJEKA**                          **CIVIL ACTION NO. 26-0281**

                                          **SECTION P**

**VS.**

                                          **JUDGE JAMES D. CAIN, JR.**

**SHAD RICE, ET AL.**                     **MAG. JUDGE CAROL B. WHITEHURST**

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Danjel Gjeka, a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[1] Respondents oppose the petition. [doc. # 6]. For reasons below, the Court should deny the petition.

## <u>Background</u>

Petitioner is a citizen of Albania. [doc. # 1, p. 7]. He entered the United States of America on May 14, 2021. *Id.* He "was detained by DHS for approximately ten days" and thereafter released on supervision. *Id.* at 8-9.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

"After his release, Gjeka traveled to New York city where he has close family members and has resided in New York city ever since his release in 2021. He received work authorization and began working for a plumbing company. Today, he owns a company with a partner.  He has filed tax returns every year and has no criminal record." [doc. # 1, p. 9].

"On October 21, 2025, Gjeka was informed by a form letter at what he thought would be his asylum interview that his asylum application was dismissed because he had an order of expedited removal which was incorrect." [doc. # 1, p. 9].  "On October 21, 2025, after living in the United States for over 4 years, ICE detained him at his credible fear interview in Bethpage, New York.  At that time, the Respondents gave the Petitioner an administrative arrest warrant. (Ex. G – Administrative Warrant). This warrant clearly states that his current redetention is pursuant to INA §236.  Therefore he is wrongfully detained under INA §235." *Id.* at 10.

Petitioner filed this proceeding on February 2, 2026.  He first claims that his ongoing detention violates his right to due process. [doc. # 1, pp. 18-19].  He argues that his "detention has no reasonable relationship to the regulatory purposes of civil detention." *Id.*  Petitioner next claims that the Government violated his Fourth Amendment right when it detained him without probable cause. [doc. # 1, p. 19].

Next, Petitioner claims: "Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act of 1952 (INA). INA § 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and have now been residing in the United States for four years. Instead, such individuals are subject to a different statute, INA § 1226(a), that allows for review by an immigration judge who can decide whether to release on conditional parole or bond." [doc. # 1, pp. 5, 20].

Respondents opposed the petition on April 15, 2026. [doc. # 6]. They state: "This case presents a single legal question: whether Petitioner, Danjel Gjeka, is detained under 8 U.S.C. § 1225(b)(2)(A) or § 1226(a). The dispositive statutory issue has already been resolved by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, No. 25-20496, ---- F.4th ----, 2026 WL 323330, at *1 (5th Cir. Feb. 6, 2026)." *Id.* at 1. Petitioner filed a reply on April 22, 2026. [doc. # 7].

## Law and Analysis

### I. 8 U.S.C. § 1225 vs. 8 U.S.C. § 1226

On February 6, 2026, the Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A) even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th at 502. In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8

3

U.S.C. § 1225.  *Id.*  The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A).  *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225.  Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum."  Plainly, Section 1225 does not authorize release on bond.  *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

Petitioner states that his "case is distinguishable" because in *Buenrostro-Mendez* "there was no prior detention or an order for release on recognizance as in this instant case."  [doc. # 7].  *Buenrostro-Mendez*, however, did not turn on whether the petitioners were released on recognizance; rather, it turned on whether the petitioners were "applicants for admission" and "seeking admission."  *Buenrostro-Mendez*, 166 F.4th at 502.  And Petitioner does not adequately distinguish his case from *Buenrostro-Mendez* as to whether he is or is not an applicant for admission and seeking admission.[2]  *See generally* 8 U.S.C. § 1182(b)(5)(A) ("The Secretary of

---

[2]See *Firatli v. Patterson*, 2026 WL 561103, at *2 (W.D. La. Feb. 27, 2026) (Summerhays, J.) ("Petitioner argues that he was originally paroled and that this fact precludes mandatory detention. Petitioner is correct that the petitioners in *Buenrostro-Mendez* apparently had not been paroled.

Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission

---

However, nothing in the statutory language of§ 1225(b)(2) or the Fifth Circuit's interpretation of that provision makes a distinction for applicants who, at some point, had been granted parole. Here, while Petitioner was originally granted parole, that parole was subsequently revoked. Petitioner was then detained pending a decision on his asylum application.  As previously explained, Petitioner is an 'applicant for admission' and satisfies the requirements for mandatory detention under§ 1225(b)(2) as construed in *Buenrostro-Mendez*."); *Moreira v. Martinez*, 2026 WL 1419153, at *1 (S.D. Tex. May 20, 2026) ("Petitioner argues that because he was detained and released upon his entry into the United States, he cannot be detained under § 1225(b)(2). However, as the Fifth Circuit explained in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), an alien who is present without lawfully being admitted to the United States is an applicant for admission and is therefore subject to mandatory detention under § 1225(b)(2)."); but see *Panameno Lopez v. Moniz*, 2026 WL 515681, at *2 (D. Mass. Feb. 25, 2026) ("Moreover, the government has not treated petitioner as an 'applicant for admission . . . seeking admission' into the United States. . . . He was released at the border and Citizenship and Immigration Services granted him Special Immigrant Juvenile status.  Special Immigrant Juvenile status 'converted [the petitioner] from being an arriving alien to an alien present in the United States'). The government cannot turn back time and do so now.  Thus, because the government has not proffered an alternative authority for detention, to the extent that the government has such lawful authority, it must be under § 1226(a).") (citations omitted); *Jimenez Vera v. Blanche*, 2026 WL 1430908, at *4 (D. Nev. May 21, 2026) ("Jimenez Vera is not actively seeking to lawfully cross into the territorial limits of the United States because he has already entered the United States in 2023 and was thereafter released."); *Gill v. Noem*, 2026 WL 686134, at *2 (W.D. Wash. Mar. 11, 2026) ("It is undisputed that Petitioner was released on his own recognizance and living in the United States before he was re-detained at NWIPC. This casts considerable doubt on Respondents' argument that this Petitioner is currently an 'applicant for admission' subject to mandatory detention under § 1225(b)."); *Betancourth v. Tate*, 2026 WL 638482, at *2 (S.D. Tex. Mar. 6, 2026) ("[T]here are factual differences between Betancourth's circumstances and those of the Buenrostro petitioners, namely, the fact that Betancourth was previously apprehended and released pursuant to § 1226(a), whereas the petitioners in *Buenrostro* were detained pursuant to § 1225(b)(2) in the first instance. It is not clear how this prior release interacts with the Fifth Circuit's interpretation of the relevant statutes in *Buenrostro*.").

to the United States, *but such parole of such alien shall not be regarded as an admission of the alien . . . .*") (emphasis added).

Petitioner does not sufficiently distinguish his case from *Buenrostro-Mendez* and does not adequately persuade the undersigned that he is detained under Section 1226. Petitioner is not, therefore, statutorily entitled to bond or a bond hearing. The Court should dismiss his statutory claim accordingly.

## II. Due Process

In *Dzheison Ford v. Timothy Ducote, et al.*, 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society

6

or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights. In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.

Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.

The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."

Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally

permissible part of that process.").[3]   As in *Ford*, Petitioner's detention is not indefinite or potentially permanent.  As Respondents state, detention "will terminate upon the conclusion of removal proceedings, including any administrative appeal." [doc. # 6, p. 5].  Accordingly, the Court should deny Petitioner's claim.

## III. Fourth Amendment

Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)).  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation omitted).  Several sections of the Immigration and Nationality Act curtail the jurisdiction of federal district courts in immigration cases.  *See Jennings v. Rodriguez*, 583 U.S. 281, 292-96 (2018).

Petitioner claims that the Government violated his Fourth Amendment right when it detained him without probable cause.  [doc. # 1, p. 19].  However, 8 U.S.C. § 1252(g) (emphasis added), strips the Court of jurisdiction over this claim. Section 1252(g), provides: "Except as provided in this section and notwithstanding any other

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings*, adjudicate cases, or execute removal orders against any alien under this chapter." Petitioner's claim arises from a decision to commence removal proceedings against him.[4]  Accordingly, the Court should dismiss this claim.

## IV. Procedural Due Process

In his reply, Petitioner claims that the Government violated his right to procedural due process when it re-detained him without first providing a bond hearing.  He argues: "Bond hearings that conduct individualized custody determinations considering flight risk and dangerousness are the precise type of proceeding that would give a noncitizen an opportunity to be heard and to receive a

---

[4] *See Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007) ("[W]e hold that 8 U.S.C. § 1252(g)'s jurisdiction-stripping language covers the Sissokos' false arrest claim."); *Limpin v. United States*, 828 F. App'x 429 (9th Cir. 2020) (opining, where a petitioner alleged that he was wrongfully arrested and detained in connection with removal proceedings, that the "district court properly dismissed [the] action for lack of subject matter jurisdiction because claims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's jurisdiction."); *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013) (finding, where a petitioner argued that agents illegally created an arrest warrant, illegally arrested him, and illegally detained him, that Section 1252(g) barred the court from reaching the merits of the claims).

meaningful assessment of whether he is dangerous or likely to abscond.  Since the government is refusing to provide a bond hearing, immediate release is the only option."  [doc. # 7, pp. 4-5].

Preliminarily, the undersigned highlights that the two issues—procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed above—overlap but are distinct.  Even though Petitioner is detained under Section 1225 and subject to mandatory detention by statute, his statutory and regulatory statuses do not foreclose his procedural due process claim.[5]

Next, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

**A. Liberty Interest**

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. Const. amend. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful,

---

[5] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations. The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482. Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Id*. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id*. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails

11

to live up to the parole conditions." *Id.*  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release was similar to the parole described in *Morrissey*. [doc. # 1-2].  His release, for example, allowed him—with the Government's explicit permission—the freedom to live, associate, and establish ties in the United States. Thus, Petitioner had a protected liberty interest in his release.[6]

### B. Procedures Attendant Upon Petitioner's Deprivation

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations."  *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).

"The constitutional minimum of due process guarantees that notice   and   an opportunity to be heard be granted at a meaningful time and in a meaningful manner."  *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting

---

[6] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

*Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

From what the undersigned can glean, Petitioner appears to argue that the potential error in failing to provide a bond hearing is detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain him under 8 U.S.C. § 1225. Thus, even if a neutral

Here, even assuming Petitioner did not receive adequate process before his re-detention, he does not plead a violation of his right to procedural due process because he only seeks a bond hearing. Petitioner does not argue that he was denied notice and an opportunity to be heard, which are both key components of due process. *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond.").

decisionmaker determined that he was not a flight risk or a danger, Respondents would still detain him.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme.*" *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain him and remove him.[7] Relevant issues, for example, include his identity,

---

[7] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, however, Petitioner does not contend that he is entitled to release for urgent humanitarian reasons or for significant public benefit. And even if he did, he had and has the opportunity to present such a contention in his removal proceedings. *If* the Secretary of Homeland

citizenship, whether he was ever admitted or paroled, when he entered this country, and whether he is entitled to protection from removal. The Government has provided, and is providing, process after detaining him in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and a potential appeal. He is receiving opportunities to be heard on relevant issues such as his identity, whether he is "an alien present in the United States who has not been admitted or paroled,"[8] the country of which he is a citizen, the country or countries which might accept him, when he entered the country, and whether he is entitled to asylum or other protection. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

---

Security agreed, *then* Petitioner could attempt to demonstrate that he is neither a security risk nor a risk of absconding.

[8] [doc. # 1-5].

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

## Recommendation

For reasons above, **IT IS RECOMMENDED** that Petitioner Danjel Gjeka's Fourth Amendment claim be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

**IT IS FURTHER RECOMMENDED** that Petitioner's remaining claims be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the**

**District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 4th day of June, 2026.

_____

Carol B. Whitehurst
United States Magistrate Judge